IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

```
OLLIE EATMON,                         :
                                      :
     Plaintiff,                       :
                                      :
v.                                    :    CIVIL ACTION 07-0507-M
                                      :
MICHAEL J. ASTRUE,                    :
Commissioner of                       :
Social Security,                      :
                                      :
     Defendant.                       :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13-14).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 21).  Oral argument was waived in this action (Doc. 23).  Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further administrative action not inconsistent with the Orders of this Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-seven years old, had completed a tenth-grade education (Tr. 265), and had previous work experience as a nurse assistant, school bus monitor, sewing machine operator, and industrial cleaner (Tr. 288-89).  In claiming benefits, Plaintiff alleges disability due to asthma, arthritis, mild mental retardation, and alcohol abuse (Doc. 13).

The Plaintiff filed a protective application for SSI on March 26, 2003 (Tr. 62-64).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Eatmon had "the residual functional capacity to perform past relevant work when alcohol abuse and its effects are excluded from consideration" (Tr. 35; *see generally* Tr. 12-37).  Plaintiff requested review of the hearing decision (Tr. 11) by the Appeals Council, but it was denied (Tr. 5-7).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Eatmon alleges that:  (1) She meets the requirements of Listing 12.05C; (2) the ALJ improperly relied on the testimony of a non-examining source; and (3) the Appeals Council failed to properly consider newly-submitted evidence (Doc. 14).  Defendant has responded to—and denies—these claims (Doc. 15).

Plaintiff first claims that she meets the requirements for Listing 12.05C (Doc. 14, pp. 1-6).  The introductory notes to Section 12.05 state that "[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2007).  Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2007).

The Court further notes that although the regulations require that Plaintiff demonstrate that she suffered "deficits in adaptive behavior" before she turned twenty-two, 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2007), the Eleventh Circuit Court of Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), has held "that there is a presumption that

mental retardation is a condition that remains constant throughout life." The *Hodges* Court further held "that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." *Hodges*, 276 F.3d at 1266.

On October 15, 2002, Eatmon was examined by Psychologist Nina E. Tocci who found her to be euthymic and demonstrating normal speech and appropriate thought content (Tr. 151-54). Tocci administered the WAIS-III on which Plaintiff "achieved a Verbal Scale IQ of 70 (second percentile), a Performance Scale of 67 (first percentile), and a Full Scale IQ of 66" (Tr. 153). The Psychologist noted that Eatmon's overall performance was in the mentally retarded range and that the results were considered valid. Tocci noted that although Plaintiff was currently functioning in the mentally retarded range of intellectual ability, by history, she had been "functioning at least within the borderline range of intellectual ability" (Tr. 154). The Psychologist thought that Eatmon had the ability to perform in the workplace though she currently would have "difficulty completing tasks in a timely manner, concentrating, and relating to others" (*id.*).

On May 1, 2003, at the request of the Social Security

Administration, Donald W. Blanton[1] performed an examination of Plaintiff who he characterized as "obviously mentally retarded" (Tr. 187; *see generally* Tr. 186-88).  Thoughts and conversation were logical, associations were intact, and no confusion was noted.  Plaintiff was oriented to time, place, person, and situation; intelligence was estimated to be in the mild range of mental retardation.  Eatmon had limited insight and poor judgment.  Blanton reported that Plaintiff "usually [began] drinking about 9:00 a.m. with a beer . . . [and] drinks off and on all day long" (Tr. 188).  The Counselor's diagnosis was alcohol dependence and "rule out mental retardation" (*id.*).

Blanton examined Plaintiff again on February 12, 2004 and noted that she stated that she drank occasionally and had never had an alcohol problem (Tr. 220-250.  The Counselor administered the WAIS-III on which she obtained a Verbal IQ score of 69, a Performance IQ score of 63, and a Full Scale IQ score of 64.  On the Wide-Range Achievement Test (Revised III), Eatmon was found to be functioning at the first-grade level in spelling and at the second-grade level in both reading and arithmetic.  Plaintiff's low intellect and poor reading ability invalidated the results of

---

[1]The ALJ has noted that Blanton is a Licensed Professional Counselor and not a Licensed Clinical Psychologist (Tr. 28).  The ALJ went on to give little weight to Blanton's opinions on this basis, as "[l]icensed professional counselors are not acceptable medical sources as defined at 20 C.F.R. § 416.913(a)" (*id.*).  The Court finds it incredible that the Social Security Administration would refer a claimant to a specific medical source and then later discount that source as unacceptable.

the Minnesota Multiphasic Personality Inventory; the Beck Depression Inventory II revealed that Eatmon was moderately depressed.  Blanton noted that Plaintiff had scored in the mild range of mental retardation, according to the WAIS-III, which was felt to be a valid assessment; he further noted that the academic achievement testing demonstrated that she was functionally illiterate.  The Counselor's diagnosis was depression and mild mental retardation.  Blanton completed a medical source opinion form in which he indicated that Eatmon was markedly limited in her ability to do the following:  understand, carry out, remember, and use judgment in detailed or complex instructions; respond to customary work pressures; maintain attention, concentration or pace for periods of at least two hours; and maintain activities of daily living.[2]  The Counselor indicated that he thought these limitations had lasted for a year.

Plaintiff's school records show that although she only passed physical education in the seventh grade, she was not held back (Tr. 113; *see generally* Tr. 109-14).  In the second year that Eatmon went through the eighth grade, she passed one semester of math and social studies and two semesters of physical education, but was passed on to the ninth grade anyway (Tr. 113). In the ninth grade, she failed one semester of algebra and made

---

[2]Blanton indicated that he had used records from Eatmon's high school in reaching his conclusions (Tr. 220).

D's in all other classes (*id.*).  In the tenth grade, Plaintiff failed everything in the first semester except for the D she received in home economics; there are no reported grades for the second semester (Tr. 109).[3]  Nevertheless, there are failing grades reported in home economics and physical education for the eleventh grade with a C in band (*id.*).

At the evidentiary hearing, Douglas McKeown was called as a medical expert (Tr. 283-88); Plaintiff's attorney stipulated to his qualifications as a licensed clinical psychologist (Tr. 283).[4]  McKeown summarized Eatmon's school records as well as the reports by Tocci and Blanton and went on to testify as follows:

> In all three consultative evaluations the Claimant purportedly told the examiner that some alcohol use was occurring even up to February of 2004 with Dr. Blanton even though he did not consider alcohol dependence at that time as a primary issue.  Overall, the record would reflect an individual to be evaluated under 12.05.  The assessment performed by Dr. [Tocci] would reflect intellectual functioning in the mild range of mental retardation which would be consistent with her previous school performance.  The indications would be that she would meet one half of the listing there.  It does appear from all consultative reports in the absence of any type of mental health treatment or intervention and the reports of alcohol abuse on an ongoing basis that alcohol would be a

---

[3]A note on the top of Plaintiff's tenth-grade class schedule indicates that she was socially promoted (Tr. 112).

[4]The Court notes that the ALJ described McKeown as a licensed clinical psychologist (Tr. 23) though there is no record of his qualifications in the record).

> material and contributing factor at least to
> some extent and may possibly contribute to
> some very mild suppression of scores.  From a
> mental standpoint, the only documentable
> [phonetic] issues for mental health issues
> would be under 12.05 and that would meet one
> half of the listing there, with the B
> criteria suggesting mild impairment of daily
> living, mild impairment of social functioning
> and possibly moderate impairment of
> attention, concentration, persistence in pace
> with no episodes of decompensation.

(Tr. 284-85).  Upon further questioning, the Psychologist indicated his opinion that Eatmon suffered, mostly, mild-to-moderate limitations work abilities though he did find her moderately-to-markedly limited in her ability to use judgment in detailed or complex work-related decisions and markedly limited in her ability to understand, remember, and carry out detailed or complex instructions (Tr. 285-86).  McKeown indicated, though, that if Plaintiff's abilities would be more restricted if she continued to use alcohol (Tr. 286-87).

   The ALJ summarized these findings and found that Plaintiff did not meet the requirements of Listing 12.05C (Tr. 24-27).  He reached this conclusion by finding that Eatmon had failed to establish that she had significant subaverage general intellectual functioning in the developmental period; more specifically, he found that she had failed to establish deficits in any of "ten adaptive skill areas:  (1) Communication, (2) Self-Care, (3) Home-Living, (4) Social, (5) Community Use, (6)

Self-Direction, (7) Health & Safety, (8) Functional Academics, (9) Leisure, and (10) Work" (Tr. 25) (citing *The Mental Retardation: Definition, Classification, and Systems of Support*, 9th Edition, American Association on Mental Retardation (the AAMR Manual) at 38-41).  The ALJ correctly noted that Plaintiff had told various medical sources that she had quit school because she became pregnant and did not have a babysitter (Tr. 25; *cf.* Tr. 152, 220-21).  The ALJ mistakenly stated that Eaton had never repeated a grade, but correctly noted that she was not in a special education curriculum.  The ALJ also noted that Plaintiff's "work history indicate[d] adaptive functioning at a level that is inconsistent with mental retardation" (Tr. 27).

The ALJ discounted the conclusions of Blanton as being inconsistent with those of Tocci and because he was a counselor rather than a psychologist (Tr. 27-28, 31).  On the other hand, the ALJ gave great weight to the conclusions of McKeown (Tr. 27).  The ALJ also distinguished *Hodges* from this Plaintiff by noting that the claimant in that case had no past relevant work and that a licensed clinical psychologist did not provide testimony (Tr. 26).  The ALJ found that Plaintiff did not satisfy the 12.05C requirements and ultimately concluded that her "diminished cognitive functioning is significantly exacerbated by, if not entirely caused by, alcohol abuse" (Tr. 31).

The Court notes that Plaintiff has also raised the claim

that the ALJ improperly relied on the testimony of a non-examining source.  More specifically, Eatmon asserts that McKeown never personally examined her and that his testimony regarding the B criteria of 12.05C was inaccurate (Tr. 14, pp. 6-7). Because a decision on this issue is relevant to a determination of the first claim, the Court will address this claim before reaching a decision on the first claim.

The ALJ noted that McKeown was "the only mental health practitioner who had the opportunity to examine the entire medical evidentiary record" (Tr. 31).  According to the Social Security regulations, an ALJ may "ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart."  20 C.F.R. § 404.1527(f)(2)(iii) (2007).  The testimony of these medical experts is supposed to be evaluated the same as the other evidence of record.  However, the Court further notes that the opinion of a nonexamining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

In the action at hand, Eatmon objects to the Psychologist's testimony about her use of alcohol.  Plaintiff specifically

10

asserted that there was no basis for his conclusion that "alcohol would be a material and contributing factor at least to some extent and may possibly contribute to some very mild suppression of scores" (Doc. 14, p. 6; *cf.* Tr. 284).  Though the Court notes Plaintiff's objection,[5] because McKeown's testimony did not contradict the testimony of any examining physician, it was not error for the ALJ to rely on it.  *See Edwards v. Sullivan*, 937 F.2d 580, 585 (11th Cir. 1991).

The Court finds, though, that Eatmon is correct in asserting that McKeown improperly referenced and discussed Listing 12.05D[6] with regard to the B criteria.  Subsection C of Listing 12.05 calls for "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Instead of discussing this, McKeown talked about activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and episodes of decompensation—all Subsection D considerations (Tr. 284-85).  The ALJ perpetuated this error by not pointing it out and compounded

---

[5]The Court agrees with Plaintiff's assertion that McKeown has not supported his assertion with any sort of medical evidence.

[6]Subsection D of Listing 12.05 requires "[a] valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:  1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05D (2007).

the error by giving great weight to it.

However, even after having reached these decisions, the Court finds that what is more germane to this discussion is the ALJ's characterization of McKeown's testimony. The Psychologist's testimony was that "alcohol would be a material and contributing factor at least to some extent and may possibly contribute to some very mild suppression of scores" (Tr. 284). The ALJ's conclusion, however, was that Plaintiff's "diminished cognitive functioning is significantly exacerbated by, if not entirely caused by, alcohol abuse" (Tr. 31). These are not the same conclusions at all. The Court finds that the ALJ has not only given great weight to McKeown's testimony, but given it greater force as well. The Court finds that the ALJ's conclusion, just stated herein, is not supported by substantial evidence. That being so, the ALJ's conclusion that Eatmon has failed to meet requirements of Listing 12.05C cannot be said to be supported by substantial evidence. The Court, nevertheless, will further consider the final claim.

Eatmon's third claim is that the Appeals Council failed to properly consider newly-submitted evidence. Plaintiff refers to the report of Neuropsychologist John R. Goff which can be found at transcript pages 231-40 (Doc. 14, pp. 7-9). The Court notes that Defendant argues that the evidence should not be considered because it does not meet the requirements for consideration (Doc.

15, pp. 17-19).

It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence." *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985). "[N]ew evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review." *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994). It is noted, though, that "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262 (11th Cir. 2007).

John R. Goff, Neuropsychologist, examined Plaintiff on November 18, 2004, after reviewing Eatmon's school records, Blanton's report, and the ALJ's decision in this action (Doc. 231-40). Goff administered the 21-Item Test and a Computerized Assessment of Response Bias, both of which demonstrated that Eatmon was putting forth good effort and was not malingering. On the WAIS-III, Plaintiff received a full scale IQ score of 62, placing her in the mildly retarded range. Plaintiff underwent the Immediate Memory Composite, Delayed Memory Composite, and

Total Memory Composite tests and performed in a manner which was "actually the opposite of what we would expect from an individual with alcohol related cognitive deterioration" (Tr. 235). On the WRAT-III, Eatmon received scores which placed her reading and spelling abilities at the fifth-grade level while her math ability rose only to the third-grade level. Goff also administered the ABAS-II, which measures adaptive skills, with Plaintiff's daughter as the respondent; the "fairly consistent performance" placed her in the mildly retarded range (Tr. 236). In his summary of the results, the Neuropsychologist stated the following:

> I cannot rule out the possibility that her cognitive performance might be contributed to some extent by long-term, heavy alcohol abuse. That is a very difficult distinction to make. I would note though that if her current IQ test scores are the result of alcohol abuse, then the diagnosis would be dementia, not mental retardation, and it would be doubtful that the deterioration in her cognitive functioning would be reversible. In actual fact, I do not think that her cognitive status is secondary to long-term alcohol abuse. We do not see other indications, including pattern of performance indicators, for alcohol related deterioration. My opinion is that she has been functioning at or about this intellectual level throughout her life.

(Tr. 236-37). The Neuropsychologist's diagnoses were Adjustment Disorder with Depressed Mood, Alcohol Abuse, Rule out Alcohol Dependence and mild Mental Retardation. As a final comment, Goff

14

stated the following:

> Dr. McKeown is apparently of the opinion that if her alcohol use is somehow or another excluded from consideration she would not be regarded as mentally retarded.  I am not really sure how that can be done frankly.  In my view, we have indications for very deficient cognitive functioning during the developmental period (her school records), indications for adaptive skills deficits and IQ scores within the requisite ranges for a diagnosis of mild mental retardation.  In essence, all the criteria in this case seem to be met.  There may be a contribution to her difficulties from her alcohol use.  It is the case, however, that alcohol abuse does not generally cause mental retardation.

(Tr. 238).  The Court notes that Goff also completed a Medical Source Opinion in which he indicated that Plaintiff was markedly limited in her ability to complete almost all facets of work (Tr. 239-40).

After reviewing the evidence provided by Goff, the Court finds that remand is appropriate.  To make a determination of remand, "the claimant must establish that:  (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level."  *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

Defendant admits that the evidence submitted is new but has

argued that it is cumulative as the record already contains the reports of Blanton and Tocci as well as McKeown's testimony (Doc. 15, p. 18).  While the Court agrees that some of the evidence is repetitive of what already exists in the record, Goff has provided test results that do not mirror previous work.  More important than that, though, the conclusions coming from those tests directly refute the evidence upon which the ALJ relied to make his decision.

The Court finds that this evidence is material to the claims brought in this action.  The new evidence is specifically relevant to the issue of whether Eatmon's use of alcohol has caused her to be mentally retarded.  The ALJ made this the basis for his decision to deny benefits.  The Court finds that there is a reasonable possibility that this new evidence will change his mind.

The Court also finds good cause for Plaintiff's failure to present this evidence earlier in that it did not exist at the time that the ALJ rendered his decision.  Though Defendant has argued that it is inappropriate for Plaintiff to bring this evidence in the back door (*see* Doc. 15, pp. 18-19), the Court finds that the ALJ directly put into issue the nature of Plaintiff's alcohol use in relation to her mental abilities and gave great weight—and as concluded earlier, greater force than originally stated—to the testimony of McKeown, a Psychologist who

never examined Plaintiff and provided no medical support for his conclusions with regard to th issue.  After weighing all of these considerations, the Court finds that the new evidence should be considered.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental evidentiary hearing for the gathering of evidence relating to Plaintiff's cognitive functioning as it relates to her use of alcohol.  Judgment will be entered by separate Order.

DONE this 20th day of March, 2008.

s/BERT W. MILLING, JR.<br>UNITED STATES MAGISTRATE JUDGE